IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FAYE M. DeBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:08cv00615 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By:  Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Faye M. DeBerry ("DeBerry") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). On appeal, DeBerry contends that the Administrative Law Judge ("ALJ") erred by finding that she had no severe mental impairment and by not according proper weight to the opinion of one of her treating physicians, Dr. Justin White, as to her physical capacity to work. Having reviewed the record, the undersigned finds the ALJ's decision is supported by substantial evidence. As such, the Commissioner's decision is affirmed, defendant's Motion for Summary Judgment (Dkt. #21) is **GRANTED**, and plaintiff's Motion for Summary Judgment (Dkt. #15) is **DENIED**.

**I**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached

through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an

2

impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

DeBerry was 48 years old on the date of the ALJ's decision, February 29, 2008. She dropped out of school in the 12th grade, and has worked in fast food, as a building cleaner and as a babysitter.

---

[1] RFC is a measurement of the most a claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

DeBerry filed an application for benefits on September 26, 2006, seeking both DIB and SSI with an onset date of December 1, 2003.[2] In her Disability Report – Adult (SSA Form 3368), DeBerry stated that her ability to work was limited by pain in her right knee, spasms in her leg and an enlarged heart. She explained that "I lose my jobs because I cannot stand, lift or bend, every job I get I get fired from after a couple of weeks because of all my limitations." (Administrative Record, hereinafter "R." at 165.) DeBerry's applications for DIB and SSI benefits were rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was held on January 29, 2008, at which DeBerry was represented by counsel. (R. 44.)

In a decision issued on February 29, 2008, the ALJ found that DeBerry had severe impairments consisting of obesity and degenerative disc disease of the lumbar and cervical spine. (R. 15.) Considering these impairments, the ALJ found that DeBerry retained the RFC to perform a range of light work that existed in significant numbers in the national economy. (R. 21-24.) The ALJ also considered whether DeBerry suffered from a mental impairment, and he concluded that her depression and anxiety did not cause more than minimal limitation in her ability to perform basic mental work activities and were not severe. (R. 19.) The ALJ's decision considered all of DeBerry's medical records, including a November 15, 2007 report from Robert C. Miller, Ed.D., a licensed clinical psychologist. (R. 18.) Further, the ALJ considered the four broad functional areas set out in the disability regulation for evaluating mental disorders and in section 12.00C of the Listing of Impairments. He found no more than mild limitation in activities of daily living, social functioning, and concentration, persistence or pace, and found no

---

[2] Although DeBerry applied for both DIB and SSI, there is no evidence that she had a disabling physical or mental condition that began on or before her date last insured of June 30, 2006. At the hearing, DeBerry's counsel acknowledged that this was an SSI case.

4

limitation in the fourth area, as DeBerry had experienced no episodes of decompensation. The ALJ's decision further noted that "[s]he did not allege any mental impairment when she filed her application; she has not been hospitalized for mental impairments; and she only started medication for depression in October or November 2007." (R. 20.) The ALJ found DeBerry not to be credible, noting that "[h]er subjective complaints exaggerate her functional limitations and minimize her abilities." (R. 22.) The ALJ concluded that DeBerry is not disabled under the Act. (R. 26.) The Appeals Council denied DeBerry's request for review on November 10, 2008 and this appeal followed. (R. 1-4.)

### III

DeBerry first argues on appeal that the ALJ erred by finding that she had no severe mental impairments and improperly rejected the opinion of examining psychologist Robert Miller. The court finds no such error in the record. The ALJ exhaustively analyzed the medical evidence in this case, and his opinion contains a detailed explanation for his findings. There is ample evidence in the record to support the ALJ's decision.

DeBerry saw psychologist Miller on one occasion, November 15, 2007, during which he administered a Personality Assessment Inventory ("PAI"), a clinical interview, mental status exam and MINI patient health survey. (R. 479-82.) Psychologist Miller found no evidence of bipolar disorder and recounted DeBerry's description of her anxiety and panic attacks. Psychologist Miller noted that "[s]igns of anxiety observed in the examination included unsteadiness, sighing, worried look, tearfulness, easily startled, frightened, and restlessness." (R. 481.)

In contrast to the opinion of psychologist Miller, DeBerry's medical records belie any suggestion of disabling anxiety or depression. Emergency room records and office notes from

5

treating physicians in 2004 and 2005 make no mention of anxiety or depression. (R. 327, 331, 343, 347.) In late September, 2006, DeBerry went to the Carilion Roanoke Memorial Hospital ER complaining of chest pain. Most of the nursing notes and the doctor's physical exam note reported that DeBerry's mental status reflected a normal affect. However, one nursing note early on in her ER visit stated that she had an "anxious affect." (R. 287-98.) In follow up care from this ER visit, her examining physician noted on September 28, 2006 that she "complains of anxiety, memory loss." (R. 388.) DeBerry was seen in November and December, 2006 by internal medicine physicians for low back and leg pain. (R. 380-86.) No mental issues were reflected in the notes of these visits, and the note from November 9, 2006 states "PSYCHIATRIC: Mood and insight normal." (R. 385.)

On January 4, 2007, DeBerry was treated by Dr. John K. Badlissi, an internal medicine specialist, for neck, shoulder and arm pain and on March 1, 2007, Dr. Badlissi saw DeBerry for abdominal pain. Nothing appears in the notes of either of these two visits concerning complaints of anxiety or depression, and Dr. Badlissi noted that her mood and insight were normal at each visit. (R. 374, 378.)

On July 9, 2007, DeBerry saw Dr. Justin White for cough and congestion, blood pressure, back pain and a back lesion. No mention was made in Dr. White's note of any mental health issue. (R. 459-62.)

On September 12, 2007, DeBerry saw Dr. John Mearns for a variety of complaints, none of which concerned her mental health. Indeed, Dr. Mearns' note stated "no depression, anxiety or agitation." (R. 557.) Two weeks later, on September 24, 2007, DeBerry returned, this time seeing Dr. White and voicing multiple medical complaints, this time including depression and anxiety. Dr. White diagnosed her with "Major Depressive Disorder, Mild, single episode,"

6

(R. 548), and started her on some medication. Dr. White encouraged DeBerry to follow up with Dr. Badlissi as he was her primary care physician. One month later, on October 29, 2007, Dr. White noted that her depression was in partial remission. He increased DeBerry's antidepressant medication level "to better target anxious ruminations and continue to encourage therapy." (R. 538.)

DeBerry again visited the Carilion Roanoke Memorial Hospital ER for back pain on October 10, 2007. No mental health issues were raised on this visit and her mental status was assessed as "speech clear, oriented." (R. 475.) DeBerry was referred to a rheumatology clinic for her back pain and was seen by Maureen L. McGary, NP, on December 20, 2007. In her review of systems, Nurse Practitioner McGary's note indicated that DeBerry "[c]omplains of depression, anxiety, suicidal ideation. Denies memory loss, mental disturbance, hallucinations, paranoia." (R. 490.)

The objective medical evidence in this case simply does not support a severe mental impairment. It was not until late September, 2007 that DeBerry was diagnosed with anxiety and depression and was prescribed any medications. She was not treated by any mental health professional, and was evaluated on one occasion by psychologist Miller. DeBerry testified at the administrative hearing that she has had depression that comes and goes for a long time, but it really came on in 2007 due to the death of some family members. (R. 80-81.) The ALJ painstakingly reviewed all of the medical records and concluded that DeBerry's depression and anxiety did not "cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe." (R. 19.) The ALJ assessed DeBerry's functional limitations stemming from her complaints of anxiety and depression using the four criteria in paragraph B of the listings, including activities of daily living, social functioning, concentration,

7

persistence or pace and episodes of decompensation. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §1200C. The ALJ's review of DeBerry's mental health concerns is detailed, thorough and plainly supported by substantial evidence.

DeBerry argues that the ALJ should have given more credence to the only opinion in the record by a treating source with psychological credentials, psychologist Miller. This argument is undermined by the relative paucity of evidence in DeBerry's medical record of a functionally limiting mental health condition. Further, DeBerry's mental health was assessed by two state agency psychologists, each of whom concluded that she did not suffer from a severe impairment. On November 2, 2006, E. Hugh Tenison completed a Psychiatric Review Technique, and concluded that DeBerry did not have a severe anxiety related disorder. Psychologist Tenison found that DeBerry had only a mild limitation in the area of maintaining social functioning, and no limitations in the other functional areas under the B criteria of the Listings. (R. 369.) On reconsideration on April 4, 2007, Howard S. Leizer agreed. (R. 397-410.) While it is true that the state agency psychologists did not have the benefit of psychologist Miller's opinion, they did have access to all of DeBerry's medical records at the time they performed their assessments. The ALJ, considering all of the evidence including psychologist Miller's report, found no severe mental impairment. On this record, the finding that DeBerry's late-breaking anxiety and depression do not constitute severe impairments is amply supported by substantial evidence.

## IV

The Commissioner's consideration of the medical evidence concerning DeBerry's physical impairments is likewise supported by substantial evidence. DeBerry was in a car wreck in April, 2004, and was diagnosed with lumbar strain. An imaging study taken at the time of her emergency room admission found "[n]o evidence of any acute bony pathology." (R. 351.)

DeBerry was not seen again for low back pain for more than two years. On November 9, 2006, she was seen by Dr. Badlissi for low back pain of 3-4 months duration. (R. 383.) Dr. Badlissi ordered x-rays of her lumbar spine, which were normal. (R. 396.) DeBerry was referred to Dr. John C. Fraser in April 2007 for a neurosurgical consult for her neck, right shoulder and arm pain. On examination, Dr. Fraser found normal reflexes and no motor or sensory deficit in her upper or lower extremities. He saw no basis for surgical intervention. (R. 419-20.) An MRI taken on April 24, 2007 showed "[b]ilateral degenerative facet disease located at the L4-L5 level. There is mild degenerative disc disease located at the L4-L5 level. Mild to moderate degenerative disc disease located at the L5-S1 level." (R. 421.) On April 26, 2007, DeBerry called Dr. Badlissi seeking a disability opinion, which he declined to provide without seeing Dr. Fraser's report. (R. 484.)

DeBerry was seen again on July 9, 2007 by Dr. White. Dr. White noted that a EMG was suggestive of radiculopathy and that she may need a neurosurgical consult. It was suggested that DeBerry begin an exercise program such as water aerobics and was referred to physical therapy. (R. 574.) The notes of a subsequent office visit with Dr. Mearns two months later reflected normal gait, range of motion and strength in lower extremities. (R. 556.) Two weeks later, on September 24, 2007, Dr. White again encouraged weight loss, exercise and physical therapy. (R. 548.) On October 10, 2007, DeBerry appeared at the emergency room seeking treatment for acute back pain starting two days before. (R. 544.) DeBerry was seen by Dr. White again on October 29, 2007, was encouraged to try water aerobics, follow through on physical therapy and was referred for a rheumatology consult. DeBerry was given a lidocaine injection her shoulder in the rheumatology clinic on December 20, 2007. On physical examination on that date, NP McGary noted "normal flexion and extension, no tenderness and normal alignment" of the

lumbar sacral spine. (R. 491.) There is nothing in the lone rheumatology report in the administrative record that supports a finding of total disability.

On appeal, DeBerry argues that the Commissioner erred by not according proper weight to the opinion of Dr. Justin White, one of her treating physicians. The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); Social Security Ruling ("SSR") 96-2p.

The ALJ is to consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," Mastro, 270 F.3d at 178, and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why

he discounted a physician's opinion. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("[T]he notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also Kratzer v. Astrue, No. 5:07cv00047, 2008 WL 936753, at *7 (W.D. Va. 2008) (noting the ALJ is expressly obligated to explain the consideration given to his opinions).

Dr. White saw DeBerry on only one occasion, July 9, 2007, before completing a Medical Assessment of Ability to do Work-Related Activities (Physical) on July 12, 2007. Dr. White's report limited DeBerry to lifting or carrying 5 pounds, standing/walking for 6 hours and sitting for 6 hours. (R. 444.) Dr. White also noted limitations in kneeling, balancing, crouching, crawling, reaching, handling and push/pulling. (R. 445.) The ALJ considered Dr. White's opinion and accorded it only slight weight, concluding that his treatment notes and objective diagnostic evidence did not support the level of limitation reflected in his opinion.[3] In declining to accord any greater weight to Dr. White's opinion, the ALJ noted that a lumbar MRI taken on April 24, 2007 only found mild to moderate degenerative disc disease; DeBerry had normal back exams on September 12 when seen by Dr. Mearns and again when she was seen in the rheumatology clinic on December 20, 2007; and her complaints suggested that her back pain was intermittent rather than constant. (R. 23.) The ALJ relied upon the physical RFC assessments

---

[3] Of interest, DeBerry also presented Dr. White with "disability forms" at her office visit on September 24, 2007, which he declined to complete, advising DeBerry that Dr. Badlissi, as her primary care physician, is the appropriate person to complete said forms. The note indicates that Dr. White placed these forms in Dr. Badlissi's mail box, but there is no indication in the record that these forms were ever completed. (R. 548.) There is no disability opinion from Dr. Badlissi in the record.

11

performed by Drs. Robert McGuffin on November 2, 2006 and Joseph Duckwall on April 4, 2007, (R. 353-58, 411-417), in concluding that DeBerry retained the RFC to perform a less than full range of light work.

When faced with conflicting evidence in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and her ability to work. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); accord Melvin v. Astrue, No. 606cv32, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007). Accordingly, the ALJ is not required to accept DeBerry's testimony that she is disabled, and instead must determine through an examination of the objective medical record whether DeBerry has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-94 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). A claimant's statements alone are not enough to establish a physical or mental impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a). "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591 (citing Mickles v. Shalala, 29 F.3d 918, 922 (4th Cir. 1994)); see also 20 C.F.R. §§ 404.1529(b), 416.929(b). Subjective evidence cannot take precedence over objective medical evidence or the lack thereof. Craig, 76 F.3d at 592 (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)). The ALJ must determine whether DeBerry's testimony about her symptoms is credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere

with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989); Melvin, 2007 WL 1960600, at *1; SSR 95-5p.

Based on this record, the court finds no reason to disturb the ALJ's credibility assessment. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ considered the entirety of DeBerry's medical evidence, including all of her treating medical evidence and the RFC assessments of Dr. White and the state agency physicians, and concluded that she could perform a less than full range of light work. Although Dr. White was a treating source, the ALJ appropriately considered the fact that he was not her primary treating physician and had seen her only one time before completing the RFC form for her lawyer. Rather than rely exclusively on the assessment of Dr. White, whose treatment of DeBerry was episodic, the ALJ was entitled to rely on a review of her entire medical history in concluding that she was not disabled from all work. Although Dr. White was a treating source, his sparse contact with DeBerry was an appropriate factor to be considered by the ALJ in determining what weight his decision should be accorded. Until November, 2006, DeBerry had very little in the way of treatment for her low back pain. Further, no other medical sources suggest that DeBerry is totally disabled from all work. It is noted that Dr. Badlissi, her primary treating source, was asked twice to provide a disability opinion, but never did so. On this record, the ALJ's consideration of Dr. White's opinion was apt, and does not provide the basis for reversal of the Commissioner's decision in this case.

# V

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion. In affirming the final decision of the Commissioner, the court does not suggest that DeBerry is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating DeBerry's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed, defendant's motion for summary judgment (Dkt. # 21) is **GRANTED**, and plaintiff's Motion for Summary Judgment (Dkt. #15) is **DENIED**.

The Clerk of Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered: September 16, 2010.

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States Magistrate Judge